CITY OF ARLINGTON, TEXAS, ET AL V. JIM CANNON ET AL

No. A-4513. Decided November 17, 1954.
(271 S.W. 2d Series 414)

*Crowley, Hudson & Keltner* and *James E. Wright,* of Fort Worth, for petitioners.

The Court of Civil Appeals erred in affirming the action of the trial court because where perfect equality in taxation is impossible of attainment it should not be required; and honest mis-

takes and errors will not support injunctive action in the absence of an intentional violation of practical uniformity; and also to support injunctive relief a substantial injury must be shown; neither did petitioners (City of Arlington et al) lose their right to taxes owing on one parcel of property because of a failure to assess other property. A lack of notice will not prevent the collection of taxes in the absence of a showing of substantial injury, and notice is waived by appearance before the Board. State v. Houser, 138 Texas 28, 156 S.W. 2d 968; Druesdow v. Baker, 229 S.W. 493; Graham v. Lasater, 26 S.W. 472.

*Martin & Moore* and *Elvin E. Tackett,* of Fort Worth, for respondent.

In response cited Powers v. Andrews, 253 S.W. 870; Lively v. Missouri K. & T. Ry. Co., 102 Texas 545, 120 S.W. 852; Rowland v. City of Tyler, 5 S.W. 2d 756.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Our opinion in this case handed down on October 6, 1954, is withdrawn and the following is substituted therefor.

This suit was filed by Jim Cannon, R. F. Binney, V. T. Irons, A. B. Jordan, L. M. Angell, Roy F. Barber, Jack Jarvis and John S. Adkins, for themselves and for all others similarly situated, against the City of Arlington, its mayor, city commissioners, secretary-treasurer and assessor and collector of taxes, and those who constituted the Board of Equalization for the City. The plaintiffs sought an injunction against the collection of city ad valorem taxes for the year 1952 and other relief of no importance to this decision.

The trial court entered judgment permanently enjoining defendants from collecting taxes, on valuations fixed by the Board of Equalization, from taxpayers who had not paid their taxes and who were in the following categories: 1. Those who rendered their property and whose valuation, as rendered, was raised by the Board of Equalization. 2. Those who did not render their property but whose property was rendered by the Assessor and Collector of Taxes, whose valuation, as rendered, was raised by the Board of Equalization. The judgment denied all other relief and provided that the injunction would not prohibit voluntary payment of taxes by persons in either of the categories. The plaintiffs did not appeal from the judgment. The defendants did.

The Court of Civil Appeals affirmed the judgment of the trial court. 263 S.W. 2d 299.

We will deal first with those taxpayers falling in the second category.

■ Article 1053, Vernon's Annotated Civil Statutes, provides that in all cases where the Board of Equalization raises the value of any property appearing on the books of the assessor, written notice shall be given the owner or person rendering the property of a date for hearing when the owner may appear and show cause why the value should not be raised. No such notice was given to the taxpayers in the second category. There were 227 taxpayers in this category. Some of them learned of the hearings and appeared; others did not. As to those who were not given the required notice and did not waive it by voluntary appearance, the Board of Equalization acquired no jurisdiction to raise the values at which their property was rendered. City of San Antonio v. Hoefling, 90 Texas 511, 39 S.W. 918; City of El Paso v. Howze, Texas Civ. App., 248 S.W. 99, writ refused; People ex rel Bracher v. Orvis, 300 Ill. 350, 133 N.E. 787, 24 A.L.R. 331; Beveridge v. Baer, 59 S.D. 563, 241 N.W. 727, 84 A.L.R. 197.

Those in the second category to whom no notice was given but who appeared voluntarily will be held to have waived notice and to have submitted themselves to the jurisdiction of the Board of Equalization. Victory v. State, 138 Texas 285, 158 S.W. 2d 760; Graham v. Lasater, Texas Civ. App., 26 S.W. 472, no writ history. See also 24 A.L.R. 331 and 84 A.L.R. 197. They stand in the same position as the taxpayers in the first category and will be dealt with in the same manner.

■ Relief was sought by taxpayers in the first category on the theory that arbitrary, illegal and fundamentally wrong methods used by taxing authorities had resulted in a lack of uniformity and equality of taxation, to the plaintiffs' substantial injury.

The injunction running in their favor was based primarily on three findings by the trial court, viz.: 1. That by virtue of a preconceived plan of taxing authorities certain personal property, including household furniture, stocks, bonds, notes, mortgages and money in banks, and certain land in outlying areas of the city. was not assessed at all for the year 1952; 2. That the Board of Equalization used an arbitrary, illegal and fundamentally wrong method in arriving at values of real estate; and 3.

That the Board of Equalization followed an arbitrary and illegal plan of assessing different classes of property at different percentages of value.

The deliberate adoption of a plan for the omission from the tax rolls of a large volume of property, personal or real, is in direct contravention of constitutional and statutory provisions for equality and uniformity of taxation. Article VIII, Section 1, Constitution of Texas; Article 7174, Vernon's Annotated Civil Statutes, 1925. Such a plan of taxation results in the rankest kind of discrimination between taxpayers. It does not lie with local taxing authorities to say that certain classes shall bear the entire burden of ad valorem taxation.

In the recent case of State v. Whittenburg, 153 Texas 205, 265 S.W. 2d 569, 573, we recognized the right to relief from such an arbitrary plan of taxation. However, if the taxpayer fails to avail himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect, as those remedies were used in such cases as City of Houston v. Baker, Texas Civ. App., 178 S.W. 820, writ refused, and City of Wichita Falls v. Cooper, Texas Civ. App., 170 S.W. 2d 777, writ refused, his right to relief is limited. "The government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable." City of Wichita Falls v. J. J. & M. Taxman Ref'g. Co., Texas Civ. App., 74 S.W. 2d 524, writ refused; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Texas Civ. App., 85 S.W. 2d 776, no writ history; Howth v. City of Beaumont, Texas Civ. App., 118 S.W. 2d 350, no writ history; Sam Bassett Lbr. Co. v. City of Houston, 145 Texas 492, 198 S.W. 2d 879. Once such a plan is put into effect the litigant may defeat the recovery of taxes only to the extent that they are excessive and he must assume the burden of proving excessiveness. Article 7329, Sec. 3, Vernon's Annotated Civil Statutes, 1925; Sam Bassett Lbr. Co. v. City of Houston, Texas Civ. App., 194 S.W. 2d 114, 117-118. The judgment of the Court of Civil Appeals in the cited case was reversed by this court on other grounds, but this court specifically agreed to the foregoing proposition. 145 Texas 492, 198 S.W. 2d 879, 880. In doing so the court said: "Thus, the fact that other property in the city was not assessed for taxation presents no defense to the suit against the petitioner for taxes not shown to be within themselves excessive." The difficulties to be encountered in making the necessary proof as a basis for relief is the penalty the taxpayer must pay for sitting idly by

while taxing authorities put into effect a plan of taxation which deliberately permits certain classes of property to escape taxation.

The City Commission of the City of Arlington, by resolution duly adopted, ordered property in the city assessed at 60% of its value as a basis for the 1952 tax levy. There is no showing in the record and no finding by the trial court that the taxes, within themselves, of any of the individual plaintiffs were excessive.

The Board of Equalization did not follow the statutory mandates for arriving at the value of property. It ignored market value as the basis for valuation. Its procedures in this respect were wholly unlawful and fundamentally wrong. It is now settled, however, that to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury. Druesdow v. Baker, Texas Com. App., 229 S.W. 493, affirmed; Baker v. Druesdow, 263 U.S. 137, 44 Sup. Ct. 40, 68 L. Ed. 212; Rowland v. City of Tyler, Texas Com. App., 5 S.W. 2d 756; Lubbock Hotel Co. v. Lubbock Ind. School Dist., 85 S.W. 2d 776, no writ history. We had occasion to write at some length on the subject in State v. Whittenburg, supra, and what was said there need not be repeated here.

█ The general plan of the board was to assess real property at 60% of its value. In so far as relief is sought upon the basis that unlawful methods used by the board in arriving at values of real property have resulted in excessive—as distinguished from unequal—assessed valuations being placed thereon, only those owners of real property who can establish that the unlawful procedures have resulted in actual assessment of their property at substantially more than 60% of market value would be entitled to relief, and then only as to the excess. In so far as relief is sought upon the basis that the unlawful methods used by the board in arriving at values of real property have resulted in unequal values being placed thereon, only those owners of real property who can make a reasonable showing of actual and substantial discrimination against them would be entitled to relief.

The general plan followed by the board was to assess some classes of personal property at a greater percentage of value than that adopted for real property and at a greater percentage of value than that adopted for other classes of personal property. In so far as relief is sought by the owners of personal property upon

the basis that higher percentages were applied to the property of the litigants, only those owners who can establish that their personal property was actually assessed at a substantially higher percentage of its market value than that used for other property would be entitled to relief, and then only to the extent of the excess. Such was the precise holding of the Court of Civil Appeals in Montgomery County v. Humble Oil & Ref'g. Co., 245 S.W. 2d 326, to which holding we gave our approval in State v. Whittenburg, supra. The contrary is not held in Lively v. Missouri K. & T. Ry. Co. of Texas, 102 Texas 545, 120 S.W. 852. In that case it was admitted that the intangible assets of the railway company were assessed at 100% of value whereas other property was assessed at 66-2/3%, and the injunction prevented the collection of the railway company's taxes only on a valuation in excess of 66-2/3%. Neither is there anything in City of Houston v. Baker, Texas Civ. App., 178 S.W. 820, writ refused, contrary to what we have said here. In that case the court specifically found and held that the assessment of different classes of property at different percentages of value would require the estate of Baker, and others similarly situated, "to pay taxes far in excess of the amount they would have to pay" if all property were assessed at the same percentage of value. Moreover, as has been noted, the injunction was sought and granted in that case to prevent the city from putting its unlawful plan into effect.

The trial court found that the plaintiffs had suffered substantial injury as a result of the use by the board of unlawful methods in arriving at values of real property and as a result of the assessment by the board of different classes of property at different percentages of value. Both the findings of fact of the trial court and the opinion of the Court of Civil Appeals point up specific instances of discrimination between taxpayers. Relief was not granted, however, on the theory that the plaintiffs, individually, had been the victims of specific discrimination as was the case in Dallas County v. Dallas National Bank, 142 Texas 439, 179 S.W. 2d 288, or on the theory that the property of any of the individual plaintiffs had been grossly overvalued as in Johnson v. Holland, 17 Texas Civ. App., 210, 43 S.W. 71. writ denied, and the other cases cited in State v. Whittenburg, 153 Texas 205, 265 S.W. 2d 569, 573. Under the judgment of the trial court, A. B. Jordan was the only one of the plaintiffs suing individually who was granted any relief.

■ From what has been said it must be apparent that the injunction cannot stand in favor of the class plaintiffs in the first category. Where proof of excessiveness or of substantial injury

is required as a prerequisite to the granting of relief, that proof must be made as to each taxpayer who seeks relief. Morris v. Cummings, 91 Texas 618, 45 S.W. 383, does not hold to the contrary. That was a suit to enjoin the imposition of an illegal poll tax and the suit in the form of a class action was sustained because all interested persons were similarly situated. That is not so in this type of case.

The record reflects that R. F. Binney, V. T. Irons and Jack Jarvis have paid their taxes for 1952, and that the value at which the property of Jim Cannon, L. M. Angell, Roy F. Barber and John S. Adkins was rendered was not raised by the Board of Equalization. The injunction granted by the trial court therefore did not run in their favor. The judgment denied all relief not specifically granted and they did not appeal. As to them, the judgments below denying all relief must be affirmed.

The property of A. B. Jordan was not rendered by him but by the tax assessor, and the rendition was raised by the Board of Equalization without notice to him. We find no evidence that he appeared voluntarily before the Board and the judgments of the courts below granting injunctive relief to him and to those taxpayers similarly situated, as a class, in the second category is affirmed.

The judgments of the courts below granting injunctive relief to the class plaintiffs in the first category and to those in the second category who voluntarily appeared before the board are reversed and the injunction is dissolved, without prejudice to the right of the individual taxpayers in the class to institute and prosecute suits to enjoin the collection of 1952 taxes or to defend against the collection of 1952 taxes.

As to A. B. Jordan and the class of taxpayers he represents, we do not interpret the judgment of the trial court to deny to the City of Arlington the right to collect taxes on their property. City officials are enjoined only from collecting 1952 taxes "based on values as fixed by the Board of Equalization" where the valuation at which the property was rendered by the tax assessor was raised by the Board of Equalization. In other words, city authorities may, with perfect propriety and without violating the injunction, proceed at any time to collect 1952 taxes from these taxpayers on the valuations at which their property was rendered.

A. B. Jordan is absolved of all costs of this appeal. The costs are assessed one-half against the City of Arlington and one-half against the other individual plaintiffs, jointly and severally.

The parties are given fifteen days from this date within which to file motions for rehearing.

Associate Justice Walker not sitting.

Opinion delivered November 17, 1954.