KQ1752



# The Attorney General of Texas

November 29, 1977

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
717 '-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

The Honorable Johnny W. Actkinson
Parmer County Attorney
P. O. Box 286
Farwell, Texas   79325

The Honorable Oscar H. Mauzy
Chairman, Senate Committee on
  Education
Senate Chamber
State Capitol
Austin, Texas   78711

Opinion No. H-1098

Re:  Constitutionality
of House Bill 22 per-
mitting an income cap-
italization valuation
of open space land used
for agricultural pur-
poses.

Dear Mr. Actkinson and Senator Mauzy:

You have asked whether House Bill 22 of the 65th
Legislature, Acts 1977, 65th Leg., ch. 318, at 847, codi-
fied as article 7150k, V.T.C.S., can be given effect
without the people voting on a companion constitutional
amendment.  Each of you has submitted a brief with your
request and each has concluded that a constitutional
amendment is required before the bill can be effective.

In Attorney General Opinion H-1022 (1977), which was
issued on July 6, 1977, we answered a similar inquiry from
our State legislative leadership in the negative.  Inasmuch
as the controlling constitutional provisions and the con-
trolling judicial decisions remain the same, our answer
must remain the same.  Once again we will set forward those
controlling provisions and decisions.

The constitutional questions surrounding House Bill
22 involve article 8, section 1 of the Texas Constitution
which provides in part:

> Taxation shall be equal and uniform.
> All property in this State, whether
> owned by natural persons or corpora-
> tions, other than municipal, shall
> be taxed in proportion to its value,
> which shall be ascertained as may be
> provided by law.

Article 8, section 1-d of the Constitution provides for special assessment of certain agricultural land, but there is no dispute that House Bill 22 provides for a broader program than that authorized by article 8, section 1-d.

When House Bill 22 was introduced it obviously was the view of the sponsors that a constitutional amendment would be necessary to authorize this broader program of appraisal of open space land.  The bill provided that it would become effective only if and when the companion constitutional amendment was adopted.  In fact, the contingent effective date provision was in House Bill 22 as it passed the House and Senate and as it was referred to conference committee.  It was only on May 25, 1977, when the conference committee reported its version of the bill, that House Bill 22 emerged without being explicitly dependent on the passage of the constitutional amendment.  House Journal, 65th Leg., R.S., at 3922 (May 25, 1977).  The proposed constitutional amendment was defeated in the House of Representatives when it lacked one vote of obtaining the one hundred votes necessary for passage.  House Journal, 65th Leg., R.S., at 3923 (May 25, 1977).  The vote was 99 yeas, 48 nays and 3 not voting.

Since House Bill 22 had, therefore, been passed but the companion constitutional amendment had been defeated, the legislative leadership requested an opinion prior to the special session on the constitutionality of a program of valuation of agricultural land on a basis other than market value.  While the opinion request did not specifically mention House Bill 22, the same constitutional issue raised by that legislation was involved.  Attorney General Opinion H-1022 (1977) was issued on July 6, 1977, and stated that a constitutional amendment would be required before the Legislature could provide for the valuation of one type of property at a smaller percentage of market value than other types of property.  Thereafter, certain legislators and this office, all of whom had supported the program sought to be enacted by House Bill 22, urged that the subject of such a constitutional amendment be included in the call of the special session which convened on July 11, 1977.  However, the subject was not included by the Governor in the proclamation calling the special session.

In spite of this clear history, additional arguments have been advanced in an effort to uphold the bill without the necessity of a constitutional amendment.  The arguments can be grouped under two general headings.  First, it is argued that such an amendment would not be necessary because the income capitalization method of valuation provided by House Bill 22 is merely a means of ascertaining market value.  We believe House Bill 22

indicates on its face that something other than market value
is produced by the formulas set out in the bill.  While an in-
come capitalization method of valuation may sometimes be useful
in determining market value, it is clear that House Bill 22
is designed to produce a valuation which does not represent
market value.  The bill provides that the value produced by the
income capitalization method will be less than market value.
The assessor is required to record both market value and an
income capitalization value.  He is also required to roll back
the assessments for the four years prior to a change in the use
of agricultural land and to collect the taxes for those years
as if they had been levied on market value assessments.  Add-
itionally, the legislative debates leave no doubt that the
legislation is designed to produce valuations which do not
reflect market value.

The other argument is that an amendment is unnecessary
because the Constitution gives the Legislature broad authority
to permit valuation of property on a basis other than market
value.  This argument has been rejected by our highest legal
authority on State constitutional issues.  The Supreme Court
of Texas has addressed the requirement of article 8, section 1
of the Constitution.  The court said:

> Article 8, § 1, of the Constitution, con-
> tains this language:  "All property in
> this state, whether owned by natural persons
> or corporations, other than municipal, shall
> be taxed in proportion to its value, which
> shall be ascertained as may be provided by
> law."  The rule announced by that provision
> is "equality and uniformity."  To secure
> this "uniform and equal" taxation, the same
> sentence prescribes that the property of
> all persons and corporations, other than
> municipal, "shall be taxed in proportion
> to its value, which shall be ascertained as
> may be provided by law."  This is a clearly
> expressed purpose, that the officers charged
> with the assessment of property shall in
> the manner prescribed by law ascertain its
> value.  "The value of the property is to
> be determined by what it can be bought and
> sold for."  New York State v. Barker, 179
> U.S. 287, 21 Sup. Ct. 124, 45 L. Ed. 194.
> If it means full market value when applied
> to the intangible assets of a railroad
> company, it means the same thing when
> applied to land, horses, etc.  The stan-
> dard of uniformity prescribed by the

> Constitution being the value of the prop-
> erty, taxation cannot be in the same pro-
> portion to the value of the property, unless
> the value of all property is ascertained by
> the same standard.

Lively v. Missouri, K. & T. Ry. Co. of Texas, 120 S.W. 852,
856 (Tex. 1909) (Emphasis added).

On numerous occasions Texas courts have specifically
indicated that it is settled that the Texas Constitution, unless
amended by the people to provide otherwise, requires appraisal
on the basis of market value. Rowland v. City of Tyler, 5
S.W.2d 756, 760 (Tex. Comm'n App. 1928, jdgmt adopted); Atlantic
Richfield Co. v. Warren Ind. Sch. Dist., 453 S.W.2d 190, 197
(Tex. Civ. App. -- Beaumont 1970, writ ref'd n.r.e.); Dietrich
v. Phipps, 438 S.W.2d 900, 902 (Tex. Civ. App. -- Houston [1st
Dist.] 1969, no writ); Harlingen Ind. Sch. Dist. v. Dunlap, 146
S.W.2d 235, 237 (Tex. Civ. App. -- San Antonio 1940, writ ref'd);
Porter v. Langley, 155 S.W. 1042 (Tex. Civ. App. -- Dallas 1913,
writ ref'd). See also City of Arlington v. Cannon, 271 S.W.2d
414 (Tex. 1954); City of Houston v. Baker, 178 S.W. 820 (Tex.
Civ. App. -- Galveston 1915, writ ref'd); Attorney General
Opinion H-1022 (1977).

Laudable as the purposes of House Bill 22 are in lessening
the severe economic problems facing our farmers and ranchers,
we are not at liberty to ignore the substantial and long estab-
lished judicial authority that a constitutional amendment is
necessary to implement such purposes. Accordingly, it is still
our opinion, as it was prior to the special session, that to
bring about the desired purposes of House Bill 22 an amendment
to the Texas Constitution will have to be proposed by the
Legislature and approved by a majority of Texas voters.

### S U M M A R Y

> House Bill 22 of the 65th Legislature
> (article 7150k, V.T.C.S.), which would
> establish a new program of valuing agri-
> cultural land on a basis other than
> market value, cannot be placed in effect
> without approval of the companion consti-
> tutional amendment by a majority of Texas
> voters.

The Honorable Johnny W. Actkinson
The Honorable Oscar H. Mauzy          - Page 5  (H-1098)

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst