**Alvin H. PARKER, Appellant,**

v.

**The BOARD OF TRUSTEES OF ODESSA JUNIOR COLLEGE et al., Appellees.**

**No. 6822.**

Court of Civil Appeals of Texas, El Paso.

July 11, 1979.

Rehearing Denied Aug. 8, 1979.

Gloria T. Svanas, Odessa, for appellant.

Milburn & Warner, Eben D. Warner, III, Odessa, Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Lucius D. Bunton, Jim Moseley, Odessa, for appellees.

## OPINION

OSBORN, Justice.

This is a tax case involving the evaluation and reassessment procedures used by two taxing entities in Ector County. The two taxing authorities operate a joint tax office with a combined tax roll for coexistent tax districts. The jury found the reassessment plan was reasonable and the trial Court denied all relief to the complaining taxpayer. We affirm.

The Ector County Independent School District and Odessa Junior College have for several years employed the property evaluation firm of Pritchard and Abbott to appraise property within the taxing districts. In 1975, Pritchard and Abbott began a program of reassessing all properties based on their fair market value. The plan of operation was to reevaluate different areas of the tax districts each year and no property was to be reevaluated again until the entire

district had been initially reevaluated. During this process, any property involved in new construction would be reevaluated the year the work was performed. Thus, except for new construction, the entire tax district was reevaluated before the cycle would begin anew and before another reevaluation. There were no exact guidelines as to which parts of the tax districts would be reevaluated in any given year. Pritchard and Abbott determined how much of the districts could be reevaluated in a particular year, but generally their work was done in adjoining areas from year to year. They began in the northeast part of Odessa and worked in a westerly direction from year to year. The area covered from one year to the next depended upon the personnel and the funds available and the amount of new construction.

In 1977, the Appellant's home was reevaluated and the value increased from $91,000.00 to $134,010.00. This resulted in his taxes being increased from $1,090.41 in 1976 to $1,341.68 in 1977 for an increase of $251.27. He filed this suit for an injunction against the collection of taxes for 1977 and for a refund of excess taxes in prior years.

The Appellant's first three points of error assert the trial Court erred in not finding that the reevaluation was arbitrary and resulted in an unequal tax burden on properties in the reappraised areas and that such scheme of taxation was in violation of the Appellant's rights under both the Texas and United States Constitutions. The basic contention is that all property in a taxing district should be reevaluated in the same year so that each taxpayer pays taxes based upon a reappraisal made at the same time for all property. Mr. Parker asserts that his tax burden is greater than that of those taxpayers who will not have their property reappraised until a year or more after his last reevaluation.

■ The Constitution of Texas, Article VIII, Section 1, requires that taxation be equal and uniform and that all property be taxed in proportion to its value. But, the courts have recognized that exact evaluation is impossible to achieve. *State v. Whit-*

*tenburg,* 153 Tex. 205, 265 S.W.2d 569 (1954). In order for a taxpayer to prevail against the taxing authority because it has allegedly followed an arbitrary plan or scheme, the taxpayer must show that the plan was arbitrary and illegal, and that the use of the plan worked to his substantial injury. *State v. Whittenburg,* supra; *State v. Federal Land Bank of Houston,* 160 Tex. 282, 329 S.W.2d 847 (1959).

The basic contention presented by Appellant was rejected in *Brunken Toyota, Inc. v. City of Lubbock,* 558 S.W.2d 523 (Tex.Civ. App.—Eastland 1977, writ ref'd n. r. e.). In that case, the taxing authority had divided the tax district into five zones, one of which was reappraised each year. This was later changed to four zones. Following authorities from other jurisdictions, the court concluded that there was no denial of any constitutional right in the use of a cyclical reevaluation program was carried out systematically and without intentional discrimination.

■ While it seems that it would be preferable to have the taxing authority, rather than the appraising firm, establish the area to be appraised each year, we find no evidence in this case that there was any arbitrary and intentional discrimination against any taxpayer in the plan used in Ector County. Points of Error Nos. 1, 2 and 3 are overruled.

The next four points assert error in the Court's charge and in the failure of the trial Court to enter judgment for Appellant. The Court submitted to the jury four special issues, the last three being conditionally submitted upon an affirmative finding to the preceding issue. Those issues inquired (1) whether the reassessment plan was unreasonable; (2) whether the reassessment plan was an arbitrary plan to permit certain classes of property owners to escape their fair share of the tax burden; (3) whether Parker sustained substantial injury as a result of the reassessment plan; and (4) the amount of damages sustained by Parker as a result of the reassessment plan.

In each instance, the burden was on the Appellant to obtain a favorable answer to the issue submitted. In answer to Special Issue No. 1, the jury failed to find the plan was unreasonable. By reason of the conditional submission, no other issues were answered. The Court instructed the jury that the State Constitution provides that taxation shall be equal and uniform. The jury was also instructed that there must be a systematic and intentional discrimination before the Constitution is violated.

As we review the case, the problem arises from the fact that the Constitution does not require that the plan be "reasonable" as submitted in Special Issue No. 1, and the charge did not inquire if the plan used resulted in taxation which was not "equal and uniform" as required by the Constitution. We doubt that the first issue is a controlling issue. But, the Appellant did not object to it for that reason, and did not submit a substantially correct issue as was his burden. Rule 279, Tex.R.Civ.P.; *Lyles v. Texas Employers' Insurance Association,* 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.). Likewise, no objection was made that the other issues were conditionally submitted. Thus, the Appellant has failed to sustain his burden of obtaining fact findings which would serve as a basis for a favorable judgment. Even in a case where the taxpayer seeks an injunction through a pre-certification suit, the burden is his to show that the taxing authority has followed a scheme that is arbitrary and illegal. Point of Error No. 4 is overruled.

The next point complains of the wording used in Special Issue No. 2. The Appellant did not tender a substantially correct issue as was his burden and any error has been waived. Rule 279, Tex.R.Civ.P.; *Lyles v. Texas Employers' Insurance Association,* supra. Point of Error No. 5 is overruled.

The last two points assert the proof shows as a matter of law that Appellant sustained substantial injury in that he paid more taxes on his appraised property that he would have had to pay if all property within the districts had been simultaneously reappraised. These points cannot be sustained because Appellant did not establish fair market value of all his property within the taxing districts in order to prove substantial injury. In *Lancaster Independent School District v. Pinson,* 510 S.W.2d 380 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.), the court considered a similar contention and said:

Whether injunctive relief is sought before or after an illegal assessment plan is put into effect, taxpayers must show substantial injury in order to obtain injunctive relief against such a plan; that is to say, they must show that the plan would discriminate against them by deliberately assessing their property at a greater percentage of its true value than the percentage assessed for other properties subject to the tax. *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 417 (1954); *Atlantic Richfield Co. v. Warren Ind. Sch. Dist.,* 453 S.W.2d 190, 198 (Tex. Civ.App.—Beaumont 1970, writ ref'd n. r. e.). If the plan wholly excludes some classes of property from the assessment rolls, injury from such a plan may be shown without establishing the market value of plaintiff's property. *See City of Wichita Falls v. Cooper,* 170 S.W.2d 777 (Tex.Civ.App.—Fort Worth 1943, writ ref'd). If the plan is attacked on the ground of inequality of assessment, however, proof of actual market value of plaintiff's property is necessary, since without such proof no discrimination is established. Thus in *Montgomery County v. Humble Oil & Refining Co.,* 245 S.W.2d 326, 335 (Tex.Civ.App.—Beaumont 1951, writ ref'd n. r. e.), the taxpayer showed that the board of equalization had used an illegal plan to raise its tax valuation in that it had raised the valuation of mineral properties to about one-third of what the board assumed to be the market value and assessed all other property at about one-tenth of its assumed market value. The court held that although this plan was illegal the taxpayer was not entitled to a temporary injunction because plaintiff was not injured if

its property was actually worth more than ten times its assessed value, as evidence of actual value might show. The holding in *Humble* was expressly approved by the supreme court in *State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569, 574 (1954), and also in *City of Arlington v. Cannon, supra,* 271 S.W.2d at 417.

■ In *Anderson County Taxpayers' League v. City of Palestine,* 576 S.W.2d 679 (Tex.Civ.App.—Tyler 1979, no writ), the court in an injunction case seeking to enjoin the taxing districts from approving their tax rolls or collecting the taxes again noted the burden on the taxpayer to prove (1) an arbitrary and illegal tax scheme and (2) that they as taxpayers will probably sustain substantial injury from the illegal plan or scheme. In that case, the court concluded the first half of the burden was met but not the second half and relies upon the holding in the *Pinson* case. We conclude that in this case the taxpayer did not meet either of the two requirements in order to obtain the relief sought. Points of Error Nos. 6 and 7 are overruled.

The judgment of the trial Court is affirmed.